T.C. Memo. 2021-31

UNITED STATES TAX COURT

BRIAN E. HARRISS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23017-17, 5690-18.          Filed March 11, 2021.

Brian E. Harriss, pro se.

<u>John T. Arthur</u> and <u>Courtney S. Bacon</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  By separate notices of deficiency, respondent

determined deficiencies in petitioner's Federal income tax and section 6662(a)

accuracy-related penalties as follows:[1]

_____

[1]All monetary amounts are rounded to the nearest dollar.  All Rule
references are to the Tax Court Rules of Practice and Procedure, and all section
(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2012 | $31,862 | $1,737 |
| 2013 | 46,692 | 9,100 |
| 2014 | 43,730 | 8,391 |

After concessions,[2] the issues for decision in these consolidated cases are: (1) whether the notices of deficiency are valid; (2) whether petitioner had unreported gross income for taxable years 2013 and 2014 as respondent determined; and (3) whether for taxable year 2013 petitioner is liable under section 72(t) for a 10% additional tax on an early distribution from a qualified retirement plan.

FINDINGS OF FACT

During 2012, 2013, and 2014, CH2M Hill Alaska, Inc. (CH2M), paid petitioner $146,003, $149,802, and $165,011, respectively, for services performed and reported these amounts on Forms W-2, Wage and Tax Statement. In 2014 Anvil Corp. (Anvil) paid petitioner $10,589 for services performed and reported this amount on Form W-2.

[1](...continued)
references are to the Internal Revenue Code in effect for the years at issue.

[2]Respondent has conceded that the limitations period has expired for taxable year 2012 and has also conceded the sec. 6662(a) penalties for all years at issue.

**[*3]** On Form 1099-R, Distributions From Pensions, Annuities, Retirements or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., Fidelity Investments (Fidelity) reported that in 2013 it made a retirement plan distribution to petitioner of $36,830. The distribution code on this form described the distribution as an "Early distribution, no known exception (in most cases, under age 59½)" and stated that the "[t]axable amount" was $36,830.

On April 15, 2014, petitioner untimely filed his Form 1040, U.S. Individual Income Tax Return, for taxable year 2012, reporting zero wages and claiming a $30,152 refund for all his reported withholdings for income, Social Security, and Medicare taxes. Attached to petitioner's 2012 Form 1040 was Form 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., by which petitioner purported to correct the Form W-2 from CH2M so as to report wages, tips, and other compensation of zero. Petitioner also attached to his 2012 Form 1040 a letter addressed to the Department of the Treasury, disputing the $146,003 that CH2M had reported as wages and stating: "My activities in 2012 involved entirely private arrangements and did not involve the exercise of any federal privilege or the receipt of any federally-connected gain or benefit."

[*4]  Petitioner's Form 1040 for taxable year 2013 reported zero wages and zero taxable IRA distributions; he claimed a $10,410 refund for all his reported withholdings for income, Social Security, and Medicare taxes.  Attached to this Form 1040 was Form 4852, by which petitioner purported to correct the Form W-2 from CH2M so as to report wages, tips, and other compensation of zero.  In a letter attached to his 2013 Form 1040 petitioner explained the purpose of this Form 4852 as--

> correcting a W-2 form that reported a payment to me of wages as defined in the Code.  The amount of $149,802.00 originally reported is incorrect and is hereby disputed.  The payer, CH2M HILL Alaska, Inc. is a company incorporated in the state of Alaska with whom I worked under a private arrangement on non-trade or business activities.

Also attached to petitioner's 2013 Form 1040 was Form 4852, by which petitioner purported to correct the Form 1099-R from Fidelity so as to report Fidelity's $36,830 distribution to him as nontaxable.  A letter attached to petitioner's 2013 Form 1040 explained that the purpose of this Form 4852 was to correct the Form 1099-R that "erroneously reported IRC 6047 transactions."

Petitioner's Form 1040 for taxable year 2014 reported zero wages and claimed a $12,230 refund for all his reported withholdings for income, Social Security, and Medicare taxes.  Attached to this Form 1040 were Forms 4852, by

[*5] which petitioner purported to correct the Forms W-2 from CH2M and Anvil so as to report wages, tips, and other compensation of zero.

On August 2, 2017, the Internal Revenue Service (IRS) issued to petitioner a notice of deficiency for taxable year 2012, determining a deficiency of $31,862. The notice explained that the IRS had adjusted petitioner's gross wages to $146,003 as shown on Form W-2.

On August 22, 2017, the IRS issued to petitioner a notice of deficiency for taxable year 2013, determining a deficiency of $46,692. The notice explained that the IRS had adjusted petitioner's gross wages to $149,802 as shown on Form W-2. The notice also adjusted petitioner's gross income to include the $36,830 distribution reported by Fidelity on Form 1099-R and imposed $3,683 of additional tax for an early distribution, pursuant to section 72(t).

On December 20, 2017, the IRS issued to petitioner a notice of deficiency for taxable year 2014, determining a deficiency of $43,730. The notice explained that the IRS had adjusted petitioner's gross wages to $175,600 as shown on Forms W-2.

The signature blocks for the notices of deficiency for taxable years 2012, 2013, and 2014 each state identically "Commissioner By Christine L. Davis,

**[\*6]** Program Manager, Return Integrity and Compliance Services, Integrity and Verification Operation" and include the signature of Christine L. Davis.

Petitioner, while residing in Alaska, timely filed petitions commencing these cases, which were subsequently consolidated and set for trial.[3] About two weeks before the scheduled trial date petitioner filed a motion to dismiss these cases for lack of jurisdiction. The Court held a hearing on petitioner's motion to dismiss in conjunction with the previously scheduled trial. Petitioner chose not to testify at the trial, pleading the Fifth Amendment in response to respondent's questions.

## OPINION

I.     <u>Validity of Notices of Deficiency</u>

Petitioner has moved to dismiss these cases on the ground that the notices of deficiency are invalid. With respect to taxable years 2013 and 2014 he asserts that

---

[3]On July 17, 2019, petitioner filed a motion for summary judgment, asserting among other things that the applicable limitations period for assessment had expired for his taxable year 2012. In response, respondent conceded that the 2012 limitations period had expired. Respondent also conceded the sec. 6662(a) penalty for each of petitioner's taxable years 2012, 2013, and 2014. On the basis of respondent's concessions, on August 22, 2019, the Court granted petitioner's motion for summary judgment as it relates to the deficiency for his taxable year 2012 and as it relates to the sec. 6662(a) penalties for all years at issue but denied petitioner's motion for summary judgment as it relates to his deficiencies for taxable years 2013 and 2014.

[*7] the notices are invalid because, he says, the signer of these notices, Christine L. Davis, lacked proper delegated authority to sign and issue them.[4]

Section 6212(a) provides: "If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified

_____

[4]Although Christine L. Davis also signed the 2012 notice of deficiency, petitioner has not expressly asserted that it is invalid for lack of proper delegated authority. Rather, insofar as he challenges this Court's jurisdiction as to his 2012 taxable year, petitioner appears to rely upon respondent's statement, in his response to petitioner's motion for summary judgment, that the 2012 notice of deficiency "was untimely and therefore invalid." Notwithstanding respondent's ill-considered statement, our jurisdiction is not implicated by our accepting respondent's concession as to the expiration of the limitations period for 2012. "[I]t is well established that the issuance of a notice of deficiency beyond the statute of limitations period does not [a]ffect its validity. The statute of limitations is a defense in bar and not a plea to the jurisdiction of this Court." Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 564 (1989); see Tapper v. Commissioner, 766 F.2d 401, 403 (9th Cir. 1985); Domulewicz v. Commissioner, 129 T.C. 11, 12 n.4 (2007), aff'd in part, remanded in part on other grounds sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009); Crowell v. Commissioner, 102 T.C. 683, 693 (1994); United Bus. Corp. of Am. v. Commissioner, 19 B.T.A. 809, 831 (1930) ("[T]he proposition that a statute of limitations is a defense in bar and not a plea to the jurisdiction would seem to require no citation."), aff'd, 62 F.2d 754 (2d Cir. 1933). Indeed, our granting of petitioner's motion for summary judgment in part as it relates to his 2012 taxable year depends upon our having jurisdiction over that year. In any event, because the signature block of the 2012 notice of deficiency is essentially identical to the signature blocks of the 2013 and 2014 notices of deficiency, our analysis with respect to the validity of the 2012 notice of deficiency, if petitioner had expressly challenged it on the ground of lack of proper delegated authority (which he has not), would be essentially identical to our analysis with respect to the 2013 and 2014 notices of deficiency.

**[*8]** mail or registered mail." Section 7701(a)(11)(B) defines "Secretary" to mean "the Secretary of the Treasury or his delegate." In this context "delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context". Sec. 7701(a)(12)(A)(i).

By regulations the Secretary has extended the authority to determine deficiencies and to issue notices of deficiency to the Commissioner of Internal Revenue and to district directors, directors of service centers, and regional directors of appeals. See secs. 301.6212-1(a), 301.7701-9, Proced. & Admin. Regs. These regulations authorize the Commissioner to redelegate the performance of such functions to other officers or employees under his supervision and control; the Commissioner may also authorize further delegation of such authority by his delegates. See sec. 301.7701-9(c), Proced. & Admin. Regs. As permitted by these regulations, the authority to sign and issue notices of deficiency has been redelegated under Delegation Order 4-8, Internal Revenue Manual (IRM) pt. 1.2.43.9(1), (2), and (3) (Sept. 4, 2012). The list of positions authorized under Delegation Order 4-8 includes "Department Managers, Campus

[*9] Compliance Services (Small Business/Self-Employed)" and "Director, Return, Integrity and Compliance Services (Wage & Investment)." Id.

The notices of deficiency in question were signed on behalf of the Commissioner by Ms. Davis in her capacity as "Program Manager, Return Integrity and Compliance Services, Integrity and Verification Operation". The notices are in all respects standard and exhibit no irregularities of any kind. Significantly, in Jagos v. Commissioner, 2018 WL 3421087 (6th Cir. June 21, 2018), aff'g per order T.C. Memo. 2017-202, the Court of Appeals for the Sixth Circuit held that Ms. Davis, in her capacity as a program manager, had the requisite authority under Delegation Order 4-8 to issue notices of deficiency.[5]

Nevertheless, petitioner argues that the 2013 and 2014 notices of deficiency are invalid because, he says, Ms. Davis lacked delegated authority to issue them. Petitioner bears the burden of proof in this regard. See Perlmutter v.

---

[5]In its order affirming this Court's decision, the Court of Appeals for the Sixth Circuit stated: "The program manager that issued the Jagoses' deficiency notice was a delegate of the Secretary for this purpose [of issuing notices of deficiency]. IRM 1.2.43.9(3) (Sept. 4, 2012)." Jagos v. Commissioner, 2018 WL 3421087 (6th Cir. June 21, 2018), aff'g per order T.C. Memo. 2017-202. We take judicial notice of this Court's records, which show that Christine L. Davis signed the notice of deficiency upon which Jagos was predicated and that, just as in the instant case, Ms. Davis signed the notice on behalf of the Commissioner in her capacity as "Program Manager, Return Integrity and Compliance Services, Integrity and Verification Operation".

**[\*10]** <u>Commissioner</u>, 44 T.C. 382, 399 (1965), <u>aff'd</u>, 373 F.2d 45 (10th Cir. 1967). Petitioner bears this burden of proof partly because it is he who has moved to dismiss these cases for lack of jurisdiction, and the "normal evidentiary rule" imposes proof obligations on him as the moving party. <u>Lillis v. Commissioner</u>, T.C. Memo. 1983-142 (quoting <u>United States v. Rexach</u>, 482 F.2d 10, 16 (1st Cir. 1973)), <u>aff'd without published opinion</u>, 740 F.2d 974 (9th Cir. 1984). More fundamentally, however, petitioner bears the burden of proof because of the presumption of official regularity. <u>See</u> <u>id.</u> "Whenever an official has acted, it is presumed 'that whatever is required to give validity to the official's act in fact exists.'" <u>Id.</u> (quoting <u>Borg-Warner Corp. v. Commissioner</u>, 660 F.2d 324, 330 (7th Cir. 1981), <u>rev'g</u> T.C. Memo. 1979-350); <u>see</u> <u>Kohli v. Gonzales</u>, 473 F.3d 1061, 1068 (9th Cir. 2007) (applying the "well established principle of federal law that administrative agencies are entitled to a presumption that they 'act properly and according to law'" (quoting <u>FCC v. Schreiber</u>, 381 U.S. 279, 296 (1965))); <u>Mecom v. Commissioner</u>, 101 T.C. 374, 388 (1993) ("[P]ublic officials are presumed to have properly discharged their official duties."), <u>aff'd</u>, 40 F.3d 385 (5th Cir. 1994). As the Supreme Court has stated: "Acts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.'" <u>R.H. Stearns Co. of Bos., Mass. v. United</u>

**[*11]** <u>States</u>, 291 U.S. 54, 63 (1934) (quoting <u>Bank of the United States v.</u>

<u>Dandridge</u>, 25 U.S. (12 Wheat.) 64, 70 (1827)).[6]

Petitioner has offered no evidence that Ms. Davis lacked delegated authority

to issue the notices of deficiency. Rather, he relies primarily on the fact that the

notices show Ms. Davis' position as "Program Manager, Return Integrity and

Compliance Services, Integrity and Verification Operation"--a position not

expressly listed among those to which Delegation Order 4-8 delegates authority to

sign and issue notices of deficiency.[7]

---

[6]Petitioner relies on <u>Muncy v. Commissioner</u>, 637 F. App'x 276 (8th Cir. 2016), <u>vacating and remanding</u> T.C. Memo. 2014-251, in support of the argument that respondent has the burden to demonstrate that the notices were issued with proper authority. Petitioner's reliance on precedent from the U.S. Court of Appeals for the Eighth Circuit is misplaced given that any appeal in these cases would presumably lie with the U.S. Court of Appeals for the Ninth Circuit. <u>See</u> sec. 7482(b); <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970) (stating that we generally "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone"), <u>aff'd</u>, 445 F.2d 985 (10th Cir. 1971). As discussed above, consistently with Ninth Circuit precedent our decisions require the taxpayer to demonstrate that the Commissioner or his delegates have not properly discharged their official duties.

[7]Petitioner also argues that Ms. Davis lacked the authority to sign the notices of deficiency because, he says, the appearance of her employee identification number in attachments to the notices shows that she was the "Tax Examiner". Petitioner cites Internal Revenue Manual (IRM) pt. 4.8.9.6.1(3) (July 9, 2013): "Tax examiners are not authorized to sign notices." The quoted material upon which petitioner relies appears in an IRM chapter that applies to "Small Business and Self-Employed (SB/SE) Technical Services employees", IRM pt.

(continued...)

**[*12]** There is no statutory requirement, however, that evidence of delegated authority be embodied in Delegation Order 4-8 or any other particular document. The regulations provide the Commissioner a wide range of administrative discretion to redelegate to officers or employees under his supervision and control the performance of functions such as issuing notices of deficiency. See sec. 301.7701-9(c), Proced. & Admin. Regs.[8] Consequently, the mere fact that Ms. Davis' position is not expressly listed in Delegation Order 4-8 does not dislodge the presumption of official regularity.

---

[7](...continued)
4.8.9 (Aug. 11, 2016) ("AUDIENCE"); "Tax examiners" are expressly identified in this chapter as one of several enumerated categories of "Technical Services employees" authorized to prepare notices of deficiency, IRM pt. 4.8.9.6(1) (July 9, 2013). There is no indication in the record that Ms. Davis was at any relevant time a Technical Services employee to whom this IRM chapter would apply. More fundamentally: "The IRM lacks the force of law and does not create rights for taxpayers." Weiss v. Commissioner, 147 T.C. 179, 196 (2016), aff'd, 2018 WL 2759389 (D.C. Cir. May 22, 2018); see Urban v. Commissioner, 964 F.2d 888, 890 (9th Cir. 1992) ("[C]ompliance with the IRM's requirements is not mandatory[.]"), aff'g T.C. Memo. 1991-220. Consequently, even if we were to assume for the sake of argument that the cited IRM directive applied to Ms. Davis, it would not render invalid her performance of functions she was otherwise authorized to perform with respect to the notices of deficiency. See sec. 301.7701-9(c), Proced. & Admin. Regs.

[8]Although Delegation Order 4-8, IRM pt. 1.2.43.9(4) (Sept. 4, 2012), states that the authority delegated therein "may not be redelegated", this restriction does not apply to the Commissioner, whose delegated authority and authority to redelegate arises not from any delegation order but rather from regulations. See secs. 301.6212-1(a), 301.7701-9(c), Proced. & Admin. Regs.

**[*13]** As respondent explains, before 2015 Department Managers in Campus Compliance Services (Small Business/Self-Employed Division) oversaw the Frivolous Return Program. See IRM pt. 1.4.29.1 (Nov. 12, 2013), pt. 25.1.14.2(4) (Apr. 1, 2016), pt. 25.25.10.1.3(2) (Sept. 15, 2017). As the result of an IRS reorganization in 2014, responsibility for the Frivolous Return Program was moved to the Wage and Investment Division, Return Integrity and Compliance Services, Integrity and Verification Operation. See IRM pt. 25.1.14.2(4) (Apr. 1, 2016), pt. 25.25.10.1.3 (Sept. 15, 2017). Respondent states that as a result of this reorganization, Ms. Davis' "authority as 'Program Manager, Return Integrity and Compliance Services' derived from the title 'Department Manager', Campus Compliance Services,' a position which is listed in Delegation Order 4-8." Respondent directs us to IRM pt. 1.11.4.6(1)(3) (note) (Oct. 10, 2008), which states: "If, during a reorganization, position titles change, without substantive change in responsibility, a delegation order is still effective for the new position title until the delegation order is revised."

The circumstances and context of the 2014 IRS reorganization and this IRM directive lend support to the presumption of official regularity sufficient to sustain the inference that Ms. Davis possessed delegated authority to sign and issue the notices of deficiency. Cf. R.H. Stearns Co. of Bos., Mass., 291 U.S. at 58-64

**[\*14]** (holding that a waiver of the limitations period was effective although not signed by the Commissioner until after the limitations period had expired, stating that "the presumption of official regularity was sufficient to sustain the inference that the Commissioner on his side had done whatever was appropriate to give support to his own act" and that "[c]hoice between two doubts should be made in such a way as to favor the presumption of official regularity"); United States v. Ahrens, 530 F.2d 781, 786 n.8 (8th Cir. 1976) (noting that, in accordance with customary principles governing evidentiary presumptions, application of the presumption of official regularity "rests upon probabilities, not certainties"). Petitioner has failed to meet his burden of proof to overcome the presumption of official regularity and show that Ms. Davis lacked such delegated authority.

Moreover, as respondent points out, the courts have consistently rejected, in a variety of contexts, challenges to delegated authority to sign and issue notices of deficiency. For instance, the Court of Appeals for the Ninth Circuit rejected an argument that a notice of deficiency was invalid because it was not "properly signed" as required by the IRM; the Court of Appeals explained: (1) "The Internal Revenue Code does not require the notice of deficiency to be signed" and (2) the Commissioner's "compliance with the IRM's requirements is not mandatory." Urban v. Commissioner, 964 F.2d 888, 889-890 (9th Cir. 1992), aff'g T.C. Memo.

**[\*15]** 1991-220.  Similarly, the Court of Appeals for the Fifth Circuit rejected a taxpayer's argument that a notice of deficiency was invalid because the IRS employee who signed it lacked authority to do so; the Court of Appeals stated: "The existence of a signature or the identity of any IRS official who provides one, is superfluous."  Selgas v. Commissioner, 475 F.3d 697, 699-700 (5th Cir. 2007) (emphasis added); see also Tavano v. Commissioner, 986 F.2d 1389, 1390 (11th Cir. 1993) (holding that an unsigned notice of deficiency received by the taxpayer was valid because it "adequately advised him that the Commissioner intended to assess him, notwithstanding that the notice was unsigned"), aff'g T.C. Memo. 1991-237; Commissioner v. Oswego Falls Corp., 71 F.2d 673, 677 (2d Cir. 1934) (holding that an unsigned notice of deficiency was valid and stating that "[t]he statute does not require that it be signed"); Batsch v. Commissioner, T.C. Memo. 2016-140 (rejecting as frivolous the taxpayer's argument that notices of deficiency were invalid because they were signed by IRS employees who lacked proper delegated authority), aff'd sub nom. Hyde v .Commissioner, 695 F. App'x 166 (8th Cir. 2017); Banister v. Commissioner, T.C. Memo. 2015-10, at \*9 (rejecting as frivolous the taxpayer's argument that the notice of deficiency was invalid because it was "not signed by an authorized person" and imposing a penalty under

[*16] section 6673), aff'd, 664 F. App'x 673 (9th Cir. 2016) (imposing an additional penalty under section 6673).

We conclude and hold that the subject notices of deficiency are valid. Consequently, we will deny petitioner's motion to dismiss these cases for lack of jurisdiction.

II.     Unreported Income

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.   See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In cases involving failure to report income, the U.S. Court of Appeals for the Ninth Circuit has held that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity before the presumption of correctness attaches to the deficiency determination.  Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).  Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the IRS' determinations are arbitrary or erroneous.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

[*17] Respondent determined that for taxable years 2013 and 2014 petitioner received wages in the amounts that CH2M and Anvil reported to the IRS on Forms W-2. Respondent also determined that for taxable year 2013 petitioner received a $36,830 taxable distribution from a qualified retirement plan as Fidelity reported on Form 1099-R. Petitioner stipulated that he worked for CH2M during 2013 and 2014 and that he worked for Anvil in 2014. CH2M's payroll report and payroll register show it paid petitioner $149,802 in 2013 and $165,011 in 2014. Anvil's payroll journal shows it paid petitioner $10,589 in 2014. Fidelity's canceled check shows it paid petitioner $36,830 in 2013. Petitioner attached a Form 4852 to his 2013 tax return indicating that he had received a $36,830 distribution from Fidelity. On the basis of all this evidence, we have no difficulty concluding that respondent has established an adequate evidentiary foundation for the unreported income. The burden of proof thus shifts to petitioner to show that respondent's determinations were erroneous.[9]

_____

[9]Sec. 6201(d) provides that if, in any court proceeding, a taxpayer fully cooperates with the Commissioner and raises a reasonable dispute with respect to an information return, the Commissioner has the burden of producing reasonable and probative evidence to verify the information return. Petitioner has not raised a reasonable dispute under sec. 6201(d) with respect to any item of income reported on the information returns upon which respondent's adjustments are based.

**[*18]** Petitioner has not satisfied his burden of proof. He does not deny receiving the amounts in question and makes no meaningful argument to show why the income he received was not taxable.[10] Cf. sec. 61(a) (gross income includes "all income from whatever source derived"). We conclude that respondent's determinations of unreported income as set forth in the notices of deficiency for 2013 and 2014 are correct, and those determinations are sustained. See Hardy v. Commissioner, 181 F.3d at 1004.

III.   Section 72(t) Additional Tax

When a taxpayer receives a distribution from a qualified retirement plan, section 72(t)(1) generally provides that his tax shall be increased "by an amount equal to 10 percent of the portion of such amount which is includible in gross income." The statute provides various exceptions, e.g., where the taxpayer receiving the distribution has attained the age of 59½. See sec. 72(t)(2)(A)(i).

_____

[10]At various points in these proceedings petitioner has raised frivolous and groundless arguments similar or identical to those that he raised--and that this Court and the Court of Appeals for the Ninth Circuit rejected--in a previous case relating to his 2010 and 2011 taxable years, Harriss v. Commissioner, T.C. Memo. 2017-5, aff'd, 776 F. App'x 425 (9th Cir. 2019). In that earlier case this Court cautioned petitioner that if he continued to advance frivolous or groundless arguments he might incur substantial penalties under sec. 6673(a). Id. at *15. We renew that warning today.

[*19] Because section 72(t) imposes a "tax" rather than a "penalty", "addition to tax", or "additional amount" within the meaning of section 6751(b) and (c) or section 7491(c), petitioner has the burden of production on this issue. See Grajales v. Commissioner, 156 T.C. __ (Jan. 25, 2021) (holding that the Commissioner is not required to show written supervisory approval under section 6751(b) of a section 72(t) exaction); El v. Commissioner, 144 T.C. 140, 145-149 (2015) (holding that the Commissioner bears no burden of production under section 7491(c) as to the section 72(t) exaction). In particular, petitioner bears the burden of proving entitlement to any exception under section 72(t)(2)(A). See Bunney v. Commissioner, 114 T.C. 259, 265-266 (2000).

Petitioner has alleged no facts and produced no evidence showing that he had attained the age of 59½ when he received the distribution or that any other statutory exception applies. Accordingly, we will sustain respondent's determination that for taxable year 2013 petitioner is liable for an additional tax of $3,683 under section 72(t).

To reflect the foregoing and respondent's concessions,

An appropriate order and appropriate decisions will be entered.